UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE APPLICATION OF REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS TO UNSEAL JUDICIAL RECORDS RELATED TO SEARCH WARRANT EXECUTED ON JANUARY 14, 2026 | Misc. Action No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION OF REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS TO UNSEAL JUDICIAL RECORDS RELATED TO SEARCH WARRANT EXECUTED ON JANUARY 14, 2026**

Lin Weeks
Va. Bar No. 97351
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
lweeks@rcfp.org

Adam A. Marshall*
Grayson Clary*
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
amarshall@rcfp.org
gclary@rcfp.org

*Pro Hac Vice Application Forthcoming*

*Counsel for Applicant the Reporters Committee for Freedom of the Press*

## INTRODUCTION

On January 14, 2026, the U.S. Department of Justice took the extraordinary step of seizing *Washington Post* reporter Hannah Natanson's phone and laptops—devices that contained her work product and confidential source communications—from her Virginia home. *See* Perry Stein & Jeremy Roebuck, *FBI Executes Search Warrant at Washington Post Reporter's Home*, Wash. Post (Jan. 14, 2026), https://wapo.st/4pFh6lw.  The Attorney General has since trumpeted the search on social media, alleging that Natanson "was obtaining and reporting classified and illegally leaked information from a Pentagon contractor" and announcing that "[t]he Trump Administration will not tolerate illegal leaks of classified information that, when reported, pose a grave risk to our Nation's national security and the brave men and women who are serving our country." Attorney General Pamela Bondi (@AGPamBondi), X (Jan. 14, 2026, 10:14 AM), https://perma.cc/N4TK-BPH2.  But as of this writing, the affidavit purporting to justify that exceptional measure remains sealed in its entirety, alongside every other judicial record related to the warrant.  The public is therefore left with no means to understand the government's basis for seeking (and a federal court's basis for approving) a search with dramatic implications for a free press and the constitutional rights of journalists.

This Court should order those records unsealed.[1]  "The public's right of access to judicial records is a fundamental element of the rule of law," *In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 964 F.3d 1121, 1123 (D.C. Cir. 2020), a safeguard that applies with full force to documents that reflect the Executive Branch's exercise of the power to

---

[1]   In particular, as set forth in the accompanying Application, Applicant the Reporters Committee for Freedom of the Press (the "Reporters Committee") seeks an order unsealing the warrant, application, supporting affidavit, return, and any other judicial records related to the warrant, such as motions to seal and docket sheets (together, the "Search Warrant Materials").

search and seize, *see Balt. Sun Co. v. Goetz*, 886 F.2d 60, 65–66 (4th Cir. 1989). Even in a run-of-the-mill case, federal common law guarantees a presumption of public access to search warrant applications and affidavits, *see id.*, one that "can only be overcome by a significant countervailing interest," *Under Seal v. Under Seal*, 326 F.3d 479, 486 (4th Cir. 2003). And in this exceptional case—where the government's intrusion on a reporter's newsgathering threatens "the free flow of newsworthy information" essential to a "healthy republic," *Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 287 (4th Cir. 2000)—denying the public access to every word of every page of the government's justification for raiding a reporter's home cannot be justified.

At bottom, "[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017) (citation omitted). To vindicate that bedrock public interest in the integrity of the judicial process, the Reporters Committee respectfully urges that the Search Warrant Materials promptly be unsealed.

## FACTUAL BACKGROUND

On January 14, 2026, the Federal Bureau of Investigation executed a search warrant at the Virginia home of *Washington Post* reporter Hannah Natanson. Perry Stein & Jeremy Roebuck, *FBI Executes Search Warrant at Washington Post Reporter's Home*, Wash. Post (Jan. 14, 2026), https://wapo.st/4pFh6lw. According to the *Post*, after searching Natanson's home, agents seized Natanson's personal laptop, a work laptop, a Garmin watch, and her phone. *Id.*

The warrant as provided to Natanson reflects that the seizure was connected to the investigation and prosecution of Aurelio Perez-Lugones, *id.*, a government contractor who was charged with unlawful retention of national defense information in the U.S. District Court for the

3

District of Maryland on January 8, 2026, *see* Criminal Complaint, *United States v. Perez-Lugones*, No. 1:26-mj-00045 (D. Md. Jan. 9, 2026), ECF No. 1; *see also* 18 U.S.C. § 793(e). The affidavit in support of that complaint alleges that search warrants executed at Perez-Lugones's Laurel, Maryland home on January 8 located classified documents in his lunch box and basement. *See* Affidavit in Support of Criminal Complaint, *United States v. Perez-Lugones*, No. 1:26-mj-00045 (D. Md. Jan. 9, 2026), ECF No. 1-1. The public filings in the Perez-Lugones prosecution make no reference to Natanson or to the *Washington Post*. *See generally id.*

In a statement confirming the search, Attorney General Pam Bondi announced: "This past week, at the request of the Department of War, the Department of Justice and FBI executed a search warrant at the home of a *Washington Post* journalist who was obtaining and reporting classified and illegally leaked information from a Pentagon contractor. The leaker is currently behind bars. I am proud to work alongside Secretary Hegseth on this effort. The Trump Administration will not tolerate illegal leaks of classified information that, when reported, pose a grave risk to our Nation's national security and the brave men and women who are serving our country." Attorney General Pamela Bondi (@AGPamBondi), X (Jan. 14, 2026, 10:14 AM), https://perma.cc/N4TK-BPH2.

Because the search and seizure of a journalist's property is a rare and extreme measure, the execution of the warrant has already drawn exceptional public interest. As Bruce D. Brown, president of the Reporters Committee, explained in a statement after the search, "Physical searches of reporters' devices, homes, and belongings are some of the most invasive investigative steps law enforcement can take. There are specific federal laws and policies at the Department of Justice that are meant to limit searches to the most extreme cases because they endanger confidential sources far beyond just one investigation and impair public interest reporting in general. While

4

we won't know the government's arguments about overcoming these very steep hurdles until the affidavit is made public, this is a tremendous escalation in the administration's intrusions into the independence of the press." *RCFP Statement on FBI Search of Washington Post Reporter's Home*, Reps. Comm. for Freedom of the Press (Jan. 14, 2026), https://perma.cc/EJG8-NNLU.

On information and belief, the Search Warrant Materials are docketed as a sealed miscellaneous matter in this District. *See* Fed. R. Crim. P. 41(b) (venue for search warrant proper where the person or property to be searched is located). The Reporters Committee does not know and cannot ascertain based on public information which of the sealed search warrant matters currently reflected on this District's docket corresponds to the Search Warrant Materials. *See* Search Warrant Running List, E.D. Va., https://ecf.vaed.uscourts.gov/cgi-bin/DktRpt.pl?847319082821541-L_1_0-1 (last accessed Jan. 14, 2026).

## ARGUMENT

**I.   The common law guarantees a presumption of access to the Search Warrant Materials.**

In this Circuit, "[i]t is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings" that "springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). That common law presumption of access "extends to *all* judicial documents and records," *id.* at 265–66 (emphasis added), including warrant papers—search warrants, affidavits, returns, and inventories—in particular, *Balt. Sun Co.*, 886 F.2d at 65 (recognizing "the common law qualified right of access to the warrant papers").[2] And that much remains true, too, however the government might

---

[2] The same is true of the docket sheet and any accompanying motion to seal the materials. *See Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 430 (4th Cir. 2005) (to allow the

5

characterize the status of its investigation. *See Balt. Sun Co.*, 886 F.2d at 62 (common law presumption attaches "in the interval between execution of the warrants and indictment"); *In re Application & Affidavit for a Search Warrant*, 923 F.2d 324, 331 (4th Cir. 1991) (common law presumption applies post-indictment during ongoing criminal prosecution). Through any lens, the common law puts the government to the test of justifying secrecy in this case.

II. **The presumption of access to the Search Warrant Materials can be overcome only on a compelling showing that the government cannot make on the facts of this case.**

The common law presumption of access "may be abrogated only in unusual circumstances," *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004) (citation omitted), and the government "bears the burden" of showing that countervailing interests outweigh the public interests favoring transparency, *id.* at 575 (citation omitted). The mere existence of an investigation is not enough, because "not every release of information contained in an ongoing criminal investigation file will necessarily affect the integrity of the investigation." *Id.* at 579. And even where the government's interests justify *some* degree of sealing, "the judicial officer must consider alternatives to sealing the documents" in their entirety, which "ordinarily involve[] disclosing some of the documents or giving access to a redacted version." *Balt. Sun Co.*, 886 F.2d at 66. The government cannot justify wholesale secrecy here, where the public's ability to understand a search with serious consequences for a free press is at stake, and where any basis for secrecy is undercut by the information that is already public.

---

public to access search warrant materials, courts must "docket[] the order sealing the documents, which gives interested parties the opportunity to object after the execution of the search warrants" (internal citation and quotation marks omitted)). Otherwise, it would be impossible in practice for the press and public to enforce the presumption of access to the search warrant materials themselves.

> **A.      The public has a powerful interest in understanding an investigative step with dramatic consequences for a free press and the constitutional rights of journalists.**

Even in an ordinary case, access to warrant materials "serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194 (9th Cir. 2011) (quoting *In re N.Y. Times Co.*, 585 F. Supp. 2d 83, 90 (D.D.C. 2008)); *see also Pub. Citizen*, 749 F.3d at 271 (interest in access to judicial records "is at its apex when the government is a party"). Here the case for transparency is more urgent still, because "the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 520 (5th Cir. 2022) (citation omitted). This exceptional search implicates public interests that go to the heart of the relationship between the government and the press.

"It is exceedingly rare, even in investigations of classified disclosures, for federal agents to search a reporter's home." Benjamin Mullin et al., *F.B.I. Searches Home of Washington Post Journalist in a Leak Investigation*, N.Y. Times (Jan. 14, 2026), https://perma.cc/T782-AUQP. And for good reason. Since (and even prior to) the Founding, our citizenry has shared in the understanding that the confidentiality of a reporter's sources and work product sits at the heart of press freedom. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 361 (1995) (Thomas, J., concurring in the judgment) (emphasizing "the extent to which anonymity and the freedom of the press were intertwined in the early American mind" dating back to the 1735 trial of John Peter Zenger). Indeed, the history of the Fourth Amendment's warrant requirement is "largely a history of conflict between the Crown and the press." *Stanford v. Texas*, 379 U.S. 476, 482 (1965). The Supreme Court has therefore made clear that the Fourth Amendment must be applied with

7

"scrupulous exactitude" when First Amendment freedoms are at stake, including when a search implicates newsgathering. *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978) (citation omitted).

Other sources of federal law reflect the same concern that "[if] reporters were routinely required to divulge the identities of their sources, the free flow of newsworthy information would be restrained and the public's understanding of important issues and events would be hampered in ways inconsistent with a healthy republic." *Ashcraft*, 218 F.3d at 287.[3]  Under the Privacy Protection Act of 1980, for instance, Congress has largely barred searches and seizures of a journalist's "work product materials"—even with a warrant—unless "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." 42 U.S.C. § 2000aa(a)(1).  The Department of Justice, for its part, has maintained for decades regulations—often referred to as the 'news media guidelines'—that are "intended to provide protection to members of the news media from certain law enforcement tools, whether criminal or civil, that might unreasonably impair lawful newsgathering activities," including by restricting the use of warrants like this one. 28 C.F.R. § 50.10(a)(1).

The search at issue here raises important questions about the adequacy of those safeguards and the balance the current Department of Justice intends to strike between its investigative interests and the freedom of the press.  To single out just one concern raised by this warrant:  From 2014 through the early days of this Administration, the news media guidelines prohibited investigators from "portray[ing] reporters as criminals to get search warrants for their notes and

---

[3]     The Fourth Circuit recognizes a reporter's privilege in civil cases for just those reasons. *See id.*  In the criminal context, the Circuit has declined to recognize a freestanding privilege but emphasizes that the First Amendment nevertheless prohibits process "issued in bad faith or for the purposes of harassment." *United States v. Sterling*, 724 F.3d 482, 498 (4th Cir. 2013).

8

work materials unless it truly intended to prosecute them." Mullin et al., *supra*. That guardrail was adopted after the Obama Administration's controversial search of then-Fox News reporter James Rosen's email, in which the Justice Department's warrant application identified Rosen as a co-conspirator of the government's true target in order to skirt the protections of the Privacy Protection Act. *See id.* But when Attorney General Bondi revised the news media guidelines last year, that provision was deleted. *See id.* Here, the fact that investigators have represented to Natanson that she is not the target of its criminal investigation, *see* Stein, *supra*, raises the question whether the government again relied on that same loophole to obtain the warrant at issue.

Ultimately, though, nothing in the public's right of access turns on whether the records at issue here would demonstrate regularity or irregularity in the investigative process, or whether the government's justification was flimsy or ironclad. Instead, the point of the presumption of access is that members of the public are entitled to decide for themselves what to make of their representatives' actions: "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) (plurality opinion). In light of the public's interest in understanding for itself a search with significant consequences for freedom of the press, the government cannot plausibly justify concealing the Search Warrant Materials in their entirety.

**B.    Any interests that might support secrecy in another case are substantially diminished here in light of the information that is already publicly available.**

On the other side of the ledger, while the Reporters Committee has no access to the government's initial justifications for sealing the Search Warrant Materials, no such justification could extend to keeping those records under seal at this stage of the investigation. The search has already been executed, diminishing any risk unsealing might pose to the integrity of the search.

9

*See Balt. Sun Co.*, 886 F.2d at 64 ("Frequently—probably most frequently—the warrant papers including supporting affidavits are open for inspection by the press and public . . . after the warrant has been executed."). And the sole criminal defendant the government claims it intends to prosecute using the material obtained in this search has been arrested.

It bears underlining that the government itself has placed substantial information about its investigation in the public domain in connection with the prosecution of Perez-Lugones. *See* Affidavit in Support of Criminal Complaint, *United States v. Perez-Lugones*, No. 1:26-mj-00045 (D. Md. Jan. 9, 2026), ECF No. 1-1; *see also In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984) (common law analysis weighs "whether the public has already had access to the information contained in the records"). If the Attorney General can describe the justification for searching a reporter's home on social media, *see* @AGPamBondi, *supra*, it is difficult to see what harm could result from unsealing the justification that the Justice Department offered to this Court. The Search Warrant Materials should be unsealed.

## CONCLUSION

For the reasons given herein, the Reporters Committee respectfully urges this Court to unseal all judicial records related to the search warrant executed at the residence of *Washington Post* reporter Hannah Natanson on or about January 14, 2026, including the search warrant, application, supporting affidavit, return, and any other judicial records related to the warrant, such as motions to seal and docket sheets.

Dated: January 14, 2026
                                                            Respectfully submitted,

                                                            */s/ Lin Weeks*
                                                            Lin Weeks
                                                            Va. Bar No. 97351
                                                            REPORTERS COMMITTEE FOR
                                                              FREEDOM OF THE PRESS

1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
lweeks@rcfp.org

Adam A. Marshall*
Grayson Clary*
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
amarshall@rcfp.org
gclary@rcfp.org

*Pro Hac Vice Application Forthcoming*

*Counsel for Applicant the Reporters Committee for Freedom of the Press*

## CERTIFICATE OF SERVICE

I, Lin Weeks, hereby certify that on January 14, 2026, a copy of the foregoing was filed electronically using this Court's CM/ECF system, and sent via U.S. Mail and email to:

United States Attorney's Office for the Eastern District of Virginia
James W. Williams United States Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314
usavae.usattys@usdoj.gov

Dated: January 14, 2026                     Respectfully submitted,

                                            */s/ Lin Weeks*
                                            Lin Weeks
                                            REPORTERS COMMITTEE FOR
                                             FREEDOM OF THE PRESS

                                            *Counsel for Applicant the Reporters
                                            Committee for Freedom of the Press*